# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Nov 08, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information associated with a Facebook account for Kwesen Sanders that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. | Case No. 23 MJ 188 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the Eastern District of Wisconsin , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| 18 U.S.C. § 924(c) | Possession of a Firearm in furtherance of a Federal Drug Trafficking Crime |
| 21 U.S.C. §§ 841(a)(1) and 84 | Distributing and Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:
Please see Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

NDIVA MALAFA (Affiliate)  Digitally signed by NDIVA MALAFA (Affiliate)
Date: 2023.11.06 19:14:09 -06'00'

*Applicant's signature*

Ndiva Malafa, Task Force Officer, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 11/8/2023

*Judge's signature*

City and state: Milwaukee, WI Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Ndiva Malafa, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed, as an ATF TFO, since February 2022. I am simultaneously employed as a police officer with the City of Milwaukee Police Department (Milwaukee, Wisconsin) since December 2014.

3. I completed approximately 26 weeks of basic training at the Milwaukee Police Department Training Academy (Milwaukee, WI) and a three-day ATF TFO orientation / training at ATF's Headquarters (Washington DC). My basic law enforcement training included courses related to constitutional law and search and seizure. Furthermore, I have employed a wide variety of investigative techniques in these and other investigations, including but not limited to, the use of informants, cooperating defendants, search warrants, surveillance, interrogations, public records, DNA collection, and traffic stops.

4. My most recent assignment is with the Milwaukee Police Departments Criminal Investigation Bureau (CIB) – Special Investigations Division (SID) as a TFO with the ATF. In this capacity, I employ the techniques, as delineated in paragraph three (3).

5. As an ATF TFO, I have been involved in numerous investigations involving violations of federal and state laws including violations of 18 U.S.C. § 922(g)(1), felon in possession of a firearm, 18 U.S.C. § 924(c), possession of a firearm in furtherance of a federal drug trafficking crime, and 21 U.S.C. §§ 841(a)(1) and 846, distributing and conspiracy to distribute a controlled substance.

6. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession and firearms trafficking. In addition, I have participated in the execution of search warrants in which firearms, ammunition, and controlled substances were seized in violation of state and federal laws. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

7. During the course of my law enforcement career, I have had trainings regarding the use of social media in relation to criminal investigations. Specifically, I have received instruction regarding the use of social media sites by criminal elements. Additionally, I have conducted previous criminal investigations in which internet research that I conducted yielded the use of social media by suspects. Specifically, I know from my training and experience that alleged suspects of criminal activity, who have accounts on social media websites, will often communicate their criminal intentions or past activity via "instant message" or "in-box message" on a given social media website. The "instant message" / "in-box message" is a private communication from one user to another. Furthermore, I know through experience that many

social media users often use social media websites as their primary means to communicate with others. Additionally, I know from training and experience that suspects who use social media websites sometimes post photographs of themselves possessing incriminating items, such as large amounts of cash, narcotics, and firearms. Also, suspects in criminal investigations have been known to post statements on social websites referencing their own criminal activity.

8. Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

9. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

10. This affidavit is made in support of an application for a warrant to search the Facebook account, as further described in Attachment A. The search will be for evidence associated with violations of Title 18, United States Code, Sections 922(g)(2) and 924(a)(8) – felon in possession of a firearm –; 924(c) – use of a firearm during drug trafficking – and Title 21, United States Code, Sections 841(a)(1) and 841 (b)(1)(c) – possession with intent to distribute controlled substances, as well as other related evidence of criminal wrongdoing by Kwesen L. SANDERS (DOB XX/XX/1995), and/or any other known or unknown co-conspirators. Additionally, there is probable cause to believe that evidence of SANDERS' whereabouts and ongoing violations of his federal supervised release conditions (Title 18, United States Code, Section 3583 – Violations of Conditions of Supervised Release) will also be located within the records on the account described in Attachment A. Finally, there is probable cause to search the information described in Attachment A for evidence of these crimes, as described in

3

Attachment B.

## IDENTIFICATION OF ACCOUNT TO BE SEARCHED

10. I seek authorization to search the following Facebook account:

| USER | FACEBOOK IDENTIFICATION (UID) | FACEBOOK USER NAME |
|---|---|---|
| Kwesen Sanders | 100040479761851 | "Kwesen Sanders" |

## PROBABLE CAUSE

11. On August 8th, 2023, officers with the Milwaukee Police Department (MPD) observed a black 2021 Honda Civic, bearing WI registration plate ATA-8493, with illegal window tint. MPD officers were able to observe the driver, through the front windshield, as black male, late 20's, dark complexion, with golden grill in his teeth. Eventually, officers identified the driver as Kwesen L. SANDERS, black male, DOB XX/XX/1995.

12. Once in the area of South 22nd Street and West Greenfield Avenue, officers observed SANDERS operating the Honda Civic at a high rate of speed, in an attempt to evade law enforcement detection. Officers then attempted to conduct a traffic stop of the Honda Civic by activating their emergency lights and sirens. SANDERS, who was the sole occupant and drive of the Honda Civic, disregarded the officer's emergency lights and sirens and proceeded to flee at a high rate of speed, initiating a vehicle pursuit. During the pursuit, SANDERS operated at least twice over the posted speed limit with his vehicle lights extinguished. This created a substantial risk for collision with other vehicles and pedestrians, thus showing an utter disregard for human life and safety.

13. The pursuit concluded in the 2600 block of West Highland Boulevard,

Milwaukee, WI, with a total distance of 2.20 miles. At the conclusion of the pursuit, SANDERS egressed from the driver's seat of the Honda Civic and fled on foot from uniformed MPD officers. Officers were unable to locate SANDERS.

14. MPD officers responded back to the abandoned Honda Civic and conducted a search of the vehicle. The following items were recovered:

   a. Device (Glock Switch), and 31-round extended-capacity magazine;

   b. A knotted sandwich baggie containing a white chunky substance which was suspected cocaine, located inside a black backpack on the driver floorboard;

   c. A knotted sandwich baggie containing an orange chunky substance which was suspected methamphetamines, located inside a black backpack on the driver floorboard;

   d. A knotted sandwich baggie containing a dark gray chunky substance which was suspected heroin, located inside a black backpack on the driver floorboard;

   e. A knotted sandwich baggie containing six (6) individual corner cut baggies of a dark gray chunky substance which was suspected heroin, located inside a black backpack on the driver floorboard;

   f. A digital scale located inside a black backpack on the driver floorboard;

   g. A Wisconsin Driver's License addressed to SANDERS, located in the center console;

   h. A Vehicle Services Division paperwork addressed to SANDERS, located in the center console;

   i. A pay stub from Crossroads Care Center of Pewaukee addressed to SANDERS, located in the center console;

5

j.  Two cell phones located between the driver's seat and center console, further described as a red Apple iPhone (MPD Inventory #23025777, Item #2) and a blue Apple iPhone (MPD Inventory #23025777, Item #3).

15. Law enforcement tested the suspected cocaine to the Nark II#7 test and received a positive result for cocaine with a total weight of 3.92 grams.

16. The suspected methamphetamines were tested using the Nark II#01/15 and tested positive for methamphetamine with a total weight of 6.02 grams.

17. The suspected heroin was tested using the Nark II#11 and tested positive for opiates and fentanyl with a total weight of 2.7 grams.

18. The suspected heroin was tested using the Nark II#11 and tested positive for opiates and fentanyl with total weight of 1.23 grams.

19. Officers conducted a Wisconsin Department of Transportation search of the Honda Civics registration plate (ATA-8493). This search revealed the vehicle's registered owner was SANDERS.

20. Based on the weight of the drugs, the packaging, the presence of a firearm, multiple cell phones, and a digital scale, it appears the controlled substances were for distribution and not personal use.

21. ATF Milwaukee became aware of the details of SANDERS's arrest and the device's existence and location on August 24th, 2023. Shortly thereafter, a search warrant was drafted and executed on the two cellular devices, as described in paragraph 4.

22. Pursuant the aforementioned search warrant, TFO Malafa analyzed the recovered data retrieved from the cellular devices. Through this analysis, TFO Malafa was able to observe that the device, which had an associated iCloud account of "kwesensandersb2r@icloud.com",

6

had accessed to a Facebook page identified as "Kwesen Sanders".

23. TFO Malafa then observed the Facebook page of "Kwesen Sanders", which was identified as having the Facebook ID#**: 100040479761851**. TFO Malafa was able to identify the associated individual to the page as SANDERS. Furthermore, TFO Malafa compared the photographs on the social media page to a Milwaukee Police Department booking photo of SANDERS. Through this assessment, TFO Malafa was able to identify SANDERS as the user of Facebook account "Kwesen Sanders" (As seen in Figure 1).



(Figure 1 – MPD Booking photograph on left / Facebook photogrpah on right)

24. TFO Malafa has found it common for individuals who engage in the illegal possession of firearms and the distribution of controlled substances to utilize various features contained within the Facebook application. This includes the use of Facebook messenger as a way to communicate with buyers, in reference to drug dealing, and to communicate with sellers, in reference to the purchasing of firearm(s). This assertion is based off TFO Malafa's training and experiences.

**FACEBOOK INFORMATION**

25. Meta owns and operates a free-access social networking website ("Facebook") that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

26. Meta asks Facebook users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

27. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

28. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a

Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

29. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

30. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

31. Facebook users can exchange private messages on Facebook with other users.

These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

32. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

33. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

34. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

35. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

36. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other

services, such as Xanga, LiveJournal, and Blogger.

37. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

38. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

39. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

40. Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

41. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends'

11

Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

42. Meta also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

43. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

44. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a

12

Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Meta builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

45. Therefore, the computers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and

13

their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND ITEMS TO BE SEIZED

46. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

47. Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court of the Eastern District of Wisconsin is a district court of the United States that has jurisdiction over the offenses being investigated, 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

# ATTACHMENT A

*Property to Be Searched*

This warrant applies to information between April 13, 2019, and the present date associated with the Facebook account:

| USER | FACEBOOK IDENTIFICATION (UID) | FACEBOOK USER NAME |
|---|---|---|
| Kwesen Sanders | 100040479761851 | "Kwesen Sanders" |

# ATTACHMENT B
## Particular Things to be Seized

**Information to be disclosed by Meta**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

a. All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b. All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c. All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

d. All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Meta applications;

e. All other records of communications and messages made or received by the user, including all encrypted or private messages, chat history, video calling history, and pending "Friend" requests;

f. All "check ins" and other location information;

g. All IP logs, including all records of the IP addresses that logged into the account;

h. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i. All information about the Facebook pages that the account is or was a "fan" of;

j. All past and present lists of friends created by the account;

k. All records of Facebook searches performed by the account;

l. All audio messages sent by the account and messages received by the account;

m. All video messages sent by the account and to the account;

n. Any and all location data that is recorded by Meta related to the account

o. All information about the user's access and use of Facebook Marketplace;

p. The types of service utilized by the user;

q. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

r. All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

s. All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**Information to be seized by the government**

All information described above that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 922(g)(2) and 924(a)(8) (felon in possession of a firearm); 924(c) (use of a firearm during drug trafficking crime) and Title 21, United States Code, Sections 841(a)(1) and 841 (b)(1)(c) (possession with intent to distribute controlled substances) since April 13, 2019, to the present, including, for the user ID identified on Attachment A, information pertaining to the following matters:

    a.    Messages, correspondence, documents, photographs, videos, recordings, and records pertaining to the possession, purchase, use, trafficking, and distribution of narcotics; and

    b.    Messages, correspondence, documents, photographs, videos, recordings, and records pertaining to the possession, purchase, use, trafficking, and sales of firearms;

    c.    Messages, correspondence, documents, photographs, videos, recordings, and records pertaining to the purchase, acquirement, and disposal of assets using drug proceeds;

    d.    Messages, correspondence, documents, photographs, videos, recordings, and records pertaining to the identity and location of the account user(s).